Good morning, Your Honors, and may it please the Court, my name is Sean Unger, and along with my colleague, Michael Stevens, we're pro bono counsel for the appellant, Walter White. I want to begin today by noting that my client feels strongly about his claims, and I want to be available to the Court to answer any questions that it has. And with that note, and recognizing that we've covered the issues in the brief rather exhaustively, I want to focus our time today on three points. First, I want to focus on a factual question, whether Mr. White's cyst should have been removed and whether the failure to remove the cyst was medically unacceptable under the circumstances. Given the factual record that Mr. White developed below as a pro se litigant, that question was one for the jury, not for the Court at summary judgment. He raised the question of fact under Snow and this Court's applicable standards. Second, the discussion of the factual question will lead naturally into a discussion of why Mr. White should have been appointed counsel and or an independent medical expert below. It's true that the Ninth Circuit has recognized that the appointment of counsel is limited to exceptional circumstances, but here this was a case that raised difficult questions, medical questions and legal questions, about not only the medically acceptable response for Baker cysts, but also the medically acceptable response for medical for Baker cysts with inmates who are Jehovah's Witnesses and cannot receive blood transfusions. Kennedy, in making our determination, do we look to see, did he have some medical advice and did the medical advice agree with his conclusions or disagree? And if it did or didn't, does that matter? On the appointment? Do we look at those things when we look at this record? On the appointment of counsel issue or on the deliberate indifference in free exercise? You do have to look at the underlying evidence at the summary judgment stage about what the medical, the acceptable medical response was. And it's complicated on the appointment of counsel issue where you have a pro se litigant who is limited in his availability to get discovery and his access to outside experts, and in appropriate cases, including a case from your circuit, Gill v. Reed, the Court looked at that in determining that appointment of counsel was appropriate. On the substantive claims, on the deliberate indifference and the free exercise claims, you have to look at it as well. And Mr. White did provide that evidence to the degree that he could. He had evidence from specialists, prison specialists who called for excision of the cyst both before and after the Saffron surgery. He had the medical board from the State of California that had concluded that an earlier failure of the system. Counsel, this is not a medical malpractice case. It's an Eighth Amendment case. And so you're going to have to show that somebody in a position of appointment by the State appointed doctor was deliberately indifferent. He was seen something like 50 times by doctors. He was given what appears to be gold-plated medical care, medical care that most of the rest of us couldn't possibly get. So how can we be here on a deliberate indifference claim when he's been seen by doctors up one side and down the other? I understand the Court's question, Your Honor. The Ninth Circuit in Snow, however, has recently concluded that the amount of access to doctors isn't dispositive in and of itself. Mr. White was seen by a number of doctors. But courts from around the country look at his medical needs. Who was deliberately indifferent to his medical needs? The evidence that Mr. White presented at summary judgment suggested that Drs. Wong and Saffron at least raised the question of fact of whether or not they provided a medically acceptable response. Well, let's take those one at a time and tell me how they were deliberately indifferent to his needs. I have a lengthy report here from Dr. Saffron that I'm looking at. It's the first thing that I have here, a long memo disclosing all of the things that he discussed with Mr. White, the options that they had, his description of the procedure that they gave him. That just doesn't look like deliberate indifference. It doesn't even look like a medical malpractice case, but much, much less deliberate indifference. So where's the evidence? Your Honor, the standard that the Ninth Circuit has followed and courts from around the country have followed can be articulated in two ways on the deliberate indifference standard. And here, Your Honor's question seemed to be driving on the subjective prong. A deliberate indifference claim has an objective prong and a subjective prong. And the way that the courts have articulated the subjective prong is either, A, the response was medically unacceptable under the circumstances, or, B, in cases like McElligott from the Eleventh Circuit, courts have said where a doctor chose an easier but less efficacious standard, that gives rise to a question of fact of whether or not their response was deliberately indifferent. Okay. Well, give whatever path you want to take, counsel, but your time's running. You better talk fast. Sure. So the evidence in the record that Mr. White presented was that a doctor, Dr. Smith, had concluded both before and after the Saffron surgery that excision of the cyst was the medically appropriate, in his view, the medically appropriate response, giving Mr. White the reasonable inferences on summary judgment. That's in ER 101 through 103. The Mr. White had also contacted the medical board about an earlier. Okay. But the fact that another doctor thinks that something is medically appropriate might not even give you a medical malpractice case, much less an Eighth Amendment case. So where's the Eighth Amendment problem? Well, the Ninth Circuit has concluded in Snow and the Second. I don't want to know about Snow. Can you tell me anything in the record that would suggest that they were deliberately indifferent to this prisoner's medical needs? Your Honor, the response from the other doctors informs under the legal standard whether or not there's a question of fact of whether the response was medically appropriate under the circumstances or there was. But a mere disagreement between two doctors is not an Eighth Amendment claim. The Court in Taguchi, which Judge Ferris was on the panel, has said a disagreement between two doctors is not. But if you go to Snow in the Ninth Circuit's more recent case, the Court has also concluded that just because there is a plausible disagreement between doctors doesn't mean it's not a deliberate indifference claim. In Snow, the Court said where there's a question of fact of whether or not the response was medically appropriate, that is sufficient on the subjective problem to get the case to a jury or at least raise a question of fact. And so the evidence in the record that we would point to on those prongs are, again, the Smith referral, the California Medical Board concluding that an earlier doctor's failure to remove the cyst was not medically appropriate for Mr. White, and the fact that Drs. Lee and Pompen had referred Mr. White to Dr. Safran for removal. What I do want to point out, though, is that these complicated questions about the medically appropriate response suggest that appointment of counsel under the exceptional circumstances really would have helped Mr. White state his claim below. And given that, and given that the district court didn't give a wide discussion of why appointment of counsel wasn't appropriate, only discussing Mr. White's ability to represent himself, this is a case that meets the Terrell standard and is analogous to Gill v. Riefers. The earlier doctors recommended that the cyst be removed. Dr. Safran was resistant on that, but ultimately performed the procedure. So what's the problem? Dr. Safran performed half a cyst removal. And Mr. White's understanding, as he alleged in his verified complaint, was that the whole cyst was going to be removed. And after the surgery, Mr. White goes and sees Dr. Smith again. And Dr. Smith says, there's an issue here. The cyst is still there, and calls for further treatment on removal of the cyst. Right. Dr. Safran explained why he didn't remove the other half of it. Dr. Safran explained that the removal that he – the reason why he didn't remove the cyst was because of concerns about the main artery in the back, and that might raise a free exercise question. I see my time is almost expiring. I do want to make sure that I also get to my third point and reserve a little bit of time for rebuttal on exhaustion. On the exhaustion prong against Drs. Pompin and Lee, Mr. White had exhausted his claims under the Griffin and Jones standards. The district court below presented the case as if there was a requirement that there be a defendant-by-defendant notice requirement exhaustion. And other courts in the district court, Mahari and Gomez, have taken the position that once you exhaust a medical – a medical need, any other – Didn't he submit his administrative appeal, though, before they did anything? Drs. Lee and – the first appeal was before the Pompin surgery, but Drs. Lee and Pompin were included in the exhaustion process. Dr. Pompin by reference, Dr. Lee by signature. So if the exhaustion prong is meant to alert the prison to a problem that a doctor – that a prisoner is saying, I have a need, they were on notice. If it's appropriate, I'd like to reserve my limited time for rebuttal. Of course. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. I just want to let the Court know that other defense counsel and I are splitting our 10 minutes, so I have 5 minutes and he has 5 minutes as well. I am Vicki Whitney of the Attorney General's office. I represent the defendants, Drs. Wong, Lee, and Pompin in this case. Your Honors, White's claims of deliberate indifference against Dr. Lee and his claim of deliberate indifference and religious discrimination against Dr. Pompin were properly dismissed because he failed to exhaust administrative remedies. Moreover, the summary judgment should be affirmed as to Dr. Wong because there was no dispute of fact that Dr. Wong was not deliberately indifferent to Mr. White's care. First of all, I'll briefly address the exhaustion issue. White has claimed that Drs. Pompin and Lee were – the claims against them were exhausted by December 9, 2003 grievance. They were not. As Your Honor has pointed out, that grievance was filed before, long before, either one of those physicians ever saw Mr. White. Very clearly, Woodford v. Noe, the United States Supreme Court says where there is a process for inmate grievances, it must be followed and it must be followed to the letter. Even in Mr. White's opposition to the motion to dismiss, he flatly states that CDCR does provide a system and that it was quite simple. All you had to do was file a 602. And that's all he had to do here. The regulations, there's an entire book of regulations covering this, but the regulations make clear that when you're going to grieve something, it has to have had an adverse effect upon you, and that is that it has to have already occurred. Some act has to have happened to trigger it. The regulations, in fact, indicate that if you file something in anticipation of an act, that it can be screened out and denied on that basis alone. And so quite clearly, a grievance filed months before Dr. Pompin ever saw Mr. White, six months at least before he ever did the arthroscopic surgery. And then in Dr. Lee's case, more than a year before he ever saw Dr. Lee in terms of the allegations in this case, cannot serve to have exhausted any claims against them. And so that portion of the district court's decision was correct. Moving to the summary judgment motion filed by Dr. Wong, in the argument that was just made by Mr. White's counsel, one very important thing emerges, and that is when questioned about how each of these folks in this particular case, Dr. Wong, was deliberately indifferent, nothing can be articulated as to what he did or did not do that was incorrect or rises to the level of criminal recklessness necessary for deliberate indifference. And importantly, while appellants suggest that there was substantial evidence filed at the MSJ presented by Mr. White below as to the alleged deliberate indifference by Dr. Wong, that is not the case. The record is very clear that Mr. White filed no opposition whatsoever to the motion for summary judgment filed by Dr. Wong. While he filed a lengthy opposition to the motion by Dr. Saffron, he filed nothing with respect to Dr. Wong, and therefore he's waived any challenge or any disagreement and argument he could have raised here on appeal. Moreover, even aside from that issue of waiver, the evidence was abundant that the care provided by Dr. Wong was absolutely not deliberate indifference, and the record is very clear on the number of amount of care that he received, four specialists, physical therapy, everything. There's nothing to suggest anything close to deliberate indifference on the part of Dr. Wong, even if aside from the waiver issues. Your Honor, I know we have a question. Scalia, if we think there's a meritorious claim, we're not bound by his not filing a brief, are we? Well, typically, yes, you are, because of the warnings that are given in the Rand case. It specifically advises that a motion can be granted. But I would suggest, Your Honor, if you look at the order that the district court gave on the summary judgment motion, they mention that he didn't oppose it, but the district judge still went through and did a full analysis on the evidence, because it is de novo. So even looking at all the evidence, the declarations, even if you consider that there was nothing to controvert it, or if you looked at even the documents attached to Mr. White's complaint, there is absolutely nothing there to suggest deliberate indifference in any way, shape, or form. And I would mention just briefly on the Snow case that's being bandied about, the facts of that case are so divergent from this. We had a warden in that case saying, don't do anything for death row prisoners because they're going to die anyway, and another one will come right along. We don't have a utilization review panel that is denying for three years for no medical reason medical care to Mr. White. He had an abundance of care. And I see that my five minutes is up, so I'm going to turn it over to you.  Thank you, counsel. Mr. Pratt. Good morning, Your Honors. Wesley Pratt on behalf of Dr. Mark Safran, the UCSF specialist, who was a consultant in treating orthopedic surgeons for plaintiff appellant Walter White. On appeal, Mr. White second guesses Dr. Safran's seasoned medical opinion and judgment. Second guessing a physician does not amount to deliberate indifference under the Ninth Circuit's rulings. As this Court is well aware, allegations amounting to differences in medical opinion are insufficient as a matter of law to establish deliberate indifference. And Judge Bybee has made reference to that. And I firmly believe that there has been no deprivation under the Eighth Amendment. Despite the liberties that Mr. White has taken in his briefs, the following facts are evident. Dr. Safran took his patient to a surgery, explaining to Mr. White prior to the surgery that he had a chronically deficient knee and that the ACL was chronically deficient. He explained that any pain associated with the right knee was likely a result of pathology within the knee and not the Baker's cyst. Did Dr. Safran commit to remove the whole Baker's cyst? No. Where did Mr. White get that understanding? Do you know? I don't know. I will say to you, Your Honor, that Mr. White was insistent, according to the medical records and according to the declaration of the retained expert that supported Dr. Safran's motion for summary judgment, Dr. Vangenis, Mr. White was insistent upon a surgery meant to address a removal of the Baker's cyst. I don't know how he got it in his mind that there would be a complete excision. There was an excision. It was medically appropriate. It was therapeutic. It was medically indicated. But I'm not aware of any evidence from any person other than Mr. White's bold assertions that there was an agreement to excise the entire cyst. And for that matter, Judge Ferris was alluding to, there are no physicians, no subsequent treaters, that have suggested that there was any kind of deficient care here. Mr. White could have asked Dr. Smith to write a letter, could have asked Dr. Smith to enter a record into the CDC record indicating that he thought that there was something untoward about Dr. Safran's surgical technique or his thinking, his medical thinking. The record is devoid of that. On appeal, Mr. White claims that not enough was removed. He even goes so far as to boldly assert that there was no benefit to the surgery. According to Dr. Mr. White, Dr. Safran did nothing. Opening brief, page 21, lines 1 through 2. This is an extreme and unsupportable position. Of course, these are mere statements by a pro se plaintiff. But the critical point is they are not only inaccurate, but they are lay opinions and they have not been refuted. Mr. White did not present the trial court with any evidence that the course of treatment was in any way inadequate. Pursuant to this Court's well-documented authority, there is no reason to disturb the summary judgment that is in favor of my client. I would like to briefly turn to an issue that has been raised in the briefing with respect to the equal protection First Amendment claim. Judge Walker said it best in his opinion when he said that there was no genuine issue of material fact with respect to the religious discrimination claim because the uncontradicted evidence shows that Dr. Safran's elected course of treatment was as appropriate for plaintiff as it was for a similarly situated patient without religious objection to receiving blood or blood product. So whether analyzed under the First Amendment claim or under an equal protection claim, the religious discrimination claim is a red herring. The discovery issues that have been raised, I'll briefly touch on those. There was ample access by Mr. White to the discovery process. In a case like this, the real factual issues depend upon and rely upon the medical records. The medical records were furnished to Mr. White on two separate occasions. I do see that my time is up. I'm sorry. In conclusion, there has been no deliberate indifference to the needs of Mr. White. Thank you, Your Honors. Roberts. Roberts. Thank you, counsel. Counsel, I'll afford you a minute here on rebuttal. Thank you, Your Honor. Three quick points in response to the opposing counsel's arguments. First, the facts with respect to Dr. Wong and the delay in treatment are laid out in the briefs, and so I would rest on the evidence that's cited in the briefs with respect to Dr. Wong. As with respect to Dr. Safran and Judge Ferris' question about the need for the full removal, Mr. White did have in his verified complaint his understanding that there would be full removal. There's nothing in the pre-surgery reports that suggests full excision was not the anticipated remedy, and so there's at least the question of fact. Similarly, with respect to the discovery and Dr. Smith, that's why an appointed counsel would have really helped Mr. White. Second, appointed counsel could have gone to Dr. Smith and tried to get that kind of evidence. And lastly, with respect to the First Amendment issue, the failure to remove the cyst did create a burden on his police. And, Judge Ferris, Judge Adelman, and Judge Baivia, I thank you all for your time today. And the Court notes your service to the Pro Bono Project, and we appreciate your service to the Court and to Mr. White in this matter. So thank you very much. Thank you. The matter has been well argued. We thank all counsel for the argument. The case is submitted for decision.
judges: Adelman, Farris, Bybee